IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 17-cv-02141-PAB-KMT

SEA EAGLE FORD, LLC,

    Plaintiff,

v.

TEXAS QUALITY WELL SERVICE, LLC,

    Defendant.

## ORDER

This matter is before the Court on defendant's Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative to Transfer Venue to Texas [Docket No. 17]. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND[1]

This dispute arises from an oil drilling project in Texas. Plaintiff Sea Eagle Ford, LLC operates oil and gas wells in Texas, including the Shannon 4H well in McMullen County, Texas. Docket No. 7 at 1-2, ¶¶ 1, 6. Plaintiff is organized under Texas law but has its principal place of business in Colorado. *Id*. at 1, ¶ 1; Docket No. 39-1.[2]

On July 6, 2016, plaintiff entered into a contract with defendant Texas Quality

---

[1] The following facts are taken from plaintiff's amended complaint [Docket No. 7] and affidavits submitted by plaintiff and are presumed true for the purpose of ruling on this motion unless otherwise indicated. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

[2] Plaintiff has no employees; its operations are conducted by its sole member, Sundance Energy, Inc., a Colorado corporation. Docket No. 35 at 2-3, ¶ 1.

Well Service, LLC under which defendant agreed to provide services at plaintiff's wells. Docket No. 7 at 3, ¶ 14; Docket No. 7-1. During the negotiations of the contract, plaintiff sent the proposed contract to defendant in Texas, where defendant signed it and sent it back to plaintiff. Docket No. 35-2 at 4-7. The contract is governed by Colorado law. Docket No. 7-1 at 2. Defendant sent its invoices for work done under the contract to plaintiff in Colorado. Docket No. 7-3 at 3-7.

On March 21, 2017, while defendant was performing an operation on the Shannon 4H well to improve its performance, defendant dropped a string of casing and associated tools into the well, which became stuck. Docket No. 7 at 2-3, ¶¶ 7-8. It took more than two months and cost more than one million dollars to fish the materials out of the well. *Id*. at 3, ¶ 9. Defendant communicated with plaintiff's representatives in Colorado in the aftermath of the well incident, and third parties involved in the removal operation sent invoices to plaintiff in Colorado. Docket No. 35-3 at 2, ¶ 5. Defendant also sent letters to plaintiff in Colorado demanding that plaintiff pay the expenses related to the removal operations and stating that it would place liens on plaintiff's Texas wells if its invoices were not paid. Docket Nos. 7-2, 7-3.

On September 6, 2017, plaintiff filed a complaint against defendant in this Court. Docket No. 1. Plaintiff alleges Colorado state law claims for negligence, breach of contract, fraud, and declaratory judgment. Docket No. 7 at 3-9. On November 3, 2017, defendant filed its motion to dismiss or to transfer the case to Texas on the ground that the Court lacks personal jurisdiction over defendant. Docket No. 17.

## II. LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(2) is to determine whether the Court has personal jurisdiction over a defendant. The plaintiff bears the burden of establishing personal jurisdiction. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). The plaintiff can satisfy its burden by making a prima facie showing. *Dudnikov*, 514 F.3d at 1070. The Court will accept the well-pleaded allegations of the complaint as true in determining whether plaintiff has made a prima facie showing that personal jurisdiction exists. *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further. *Id*. The plaintiff, however, may also make this prima facie showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant. *Dudnikov*, 514 F.3d at 1070. "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiffs' favor." *Id*.

If the Court finds it has jurisdiction, defendant's alternate request, the transfer of this lawsuit to the Southern District of Texas, is governed by 28 U.S.C. § 1404(a), which provides, in pertinent part: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) is "intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation and quotation omitted). To warrant

a transfer, the moving party must establish that: "(1) the action could have been brought in the alternate forum; (2) the existing forum is inconvenient; and (3) the interests of justice are better served in the alternate forum." *Wolf v. Gerhard Interiors, Ltd.*, 399 F. Supp. 2d 1164, 1166 (D. Colo. 2005) (citing *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991)).

## III. ANALYSIS

### A. Personal Jurisdiction

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)). The Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124, has been construed to extend jurisdiction to the full extent permitted by the Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether jurisdiction offends due process. *See Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005); *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005). Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that assuming jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). Minimum contacts may be established under the doctrines of general jurisdiction or specific jurisdiction. Where

4

general jurisdiction is asserted over a nonresident defendant who has not consented to suit in the forum, minimum contacts exist if the plaintiff demonstrates that the defendant maintains "continuous and systematic general business contacts" in the state. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Plaintiff does not argue that defendant is subject to general jurisdiction in Colorado. *See* Docket No. 35 at 5. Therefore, the Court limits its discussion to this issue of specific jurisdiction.

Specific jurisdiction is present where the defendant has purposefully directed its activities at the residents of the forum and the litigation results from injuries that arise out of or relate to those activities. *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1298 (10th Cir. 1999). The specific jurisdiction analysis is two-fold. First, the Court must determine whether a defendant has such minimum contacts with Colorado that the defendant "should reasonably anticipate being haled into court" here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Within this inquiry, the Court must determine whether the defendant purposefully directed its activities at residents of the forum, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), and whether plaintiff's claim arises out of or results from "actions by . . . defendant . . . that create a substantial connection with the forum State." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987) (internal quotations omitted). Second, if defendant's actions create sufficient minimum contacts, the Court must consider whether the exercise of personal jurisdiction over defendant offends "traditional notions of fair play and substantial justice." *Id.* at 105. This latter inquiry

5

requires a determination of whether the Court's exercise of personal jurisdiction over the defendant is "reasonable" in light of the circumstances of the case.  *Id.*

Plaintiff argues that specific jurisdiction exists in this case because defendant entered into a contract with plaintiff, which is governed by Colorado law, and because defendant directed communications related to the contract and the aftermath of the Shannon 4H well incident to plaintiff's representatives in Colorado.  Docket No. 35 at 6.  Defendant argues that, notwithstanding the choice of law provision in the contract, it did not actively solicit business in Colorado and the parties' commercial relationship was centered in Texas.  Docket No. 38 at 5.

In *Walden v. Fiore*, 571 U.S. 277 (2014), the Supreme Court clarified that the "minimum contacts" analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there" and that "the same principles apply when intentional torts are involved."  *Id.* at 285-86.  In *Walden*, the Court held that a police officer who seized cash from plaintiffs in Georgia and helped draft an allegedly false affidavit to show probable cause for forfeiture of the funds – also in Georgia – was not subject to personal jurisdiction in Nevada simply because the officer knew that the plaintiffs had "strong forum connections" to Nevada.  *Id.* at 289.  In so holding, the Court clarified that it is error to "attribute[] a plaintiff's forum connections to the defendant and make[] those connections 'decisive' in the jurisdictional analysis."  *Id.*

As recognized by the Tenth Circuit, *Walden* establishes that "personal jurisdiction cannot be based on interaction with a plaintiff known to bear a strong

connection to the forum state." *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014). "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 905 (10th Cir. 2017) (quoting *Walden*, 571 U.S. at 286). After *Walden*, "[a]ny decision that implies otherwise can no longer be considered authoritative." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014), *as corrected* (May 12, 2014). Thus, the jurisdictional inquiry hinges on whether defendant "purposefully exploited the [Colorado] market" or otherwise targeted the state. *Id.* ("after *Walden* there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum'") (citation omitted).

Plaintiff cobbles together a number of defendant's activities that, standing alone, would not provide a basis for personal jurisdiction over defendant. *See* Docket No. 35 at 6-10; *see, e.g., Burger King*, 471 U.S. at 482 (holding that, while it is evidence of contact with a forum state, a contract's choice of law provision "standing alone [is] insufficient to confer jurisdiction."); *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995) (letters and phone calls alone are insufficient to confer jurisdiction)*; Advanced Tactical Ordnance Systems*, 751 F.3d at 802 (knowledge that harm will be suffered to a plaintiff in the forum state, standing alone, does not constitute sufficient minimum contacts to exercise personal jurisdiction over a defendant). The actions identified by plaintiff, however, all relate to the parties' contract and communications sent by defendant to plaintiff in Colorado that related to their contractual relationship.

7

In determining whether this contractual relationship shows that defendant "'purposefully established minimum contacts within the forum,'" the Court must "evaluate the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Old Republic Ins. Co.*, 877 F.3d at 905 (quoting *Burger King*, 471 U.S. at 479). Defendant does not dispute that it sent communications related to negotiating the contract and performance under the contract to Colorado or that plaintiff signed the contract in Colorado. *See* Docket No. 38 at 1. The contemplated future consequences of the contract, however, all relate to a project that was to take place, and did occur, entirely in Texas. Docket No. 35 at 7-8 ("Over the next nine months, TQWS performed various services for SEA under the July 7, 2016 MSA, including services to SEA at the Shannon 4H well that SEA operates in McMullen County, Texas."). The contract does not contemplate defendant establishing further contacts in Colorado. In fact, plaintiff has made no factual allegations and introduced no evidence that defendant has contacts in Colorado other than its contractual relationship with plaintiff. *See id.* at 2-3, ¶¶ 1-10. Such a limited relationship with one party does not rise to the level of "continuing and wide-reaching contacts" with Colorado that can support personal jurisdiction. *Burger King*, 471 U.S. at 473.

Plaintiff argues that this case is similar to *Aurora Bank FSB v. Network Mortg. Servs., Inc.*, No. 13-cv-00047-PAB-KLM, 2014 WL 1034588, at *6 (D. Colo. Mar. 17, 2014). In *Aurora Bank*, the plaintiff bank purchased mortgage loans from the Washington state defendant bank, which had originated the loans. *Id*. at *1. The plaintiff purchased the loans pursuant to a contract with the defendant and the

8

defendant sent its files related to the loans to the plaintiff's Colorado office. *Id*. After the plaintiff discovered the loans did not comply with the terms of the contract, it demanded that the defendant repurchase them as provided for in the contract and brought a breach of contract action. *Id*. at *1-*2. The Court found that the issue presented a "close question," but found that the defendant's actions in "purposefully appl[ying] to [the] plaintiff's Colorado office seeking to conduct negotiations and acquire correspondent lender status" in combination with the ongoing contractual duties related to Colorado were "sufficient such that [the defendant] could reasonably anticipate being haled into court here." *Id*. at *4. Here, by contrast, plaintiff does not present evidence that the defendant sought plaintiff out in Colorado or that defendant has ongoing contractual duties related to Colorado. *See, e.g.*, Docket No. 35 at 6 (identifying a package sent by plaintiff to defendant in Texas to become an approved vendor as the first step toward the parties' contractual relationship). This distinction and the progeny of *Walden*, which was decided only days before the Court's decision in *Aurora Bank*, lead the Court to a different outcome here. The Court finds that defendant lacks sufficient minimum contacts with Colorado for the Court to have personal jurisdiction over defendant.

### B. Transfer of Venue

Defendant requests that the Court dismiss plaintiff's claims or, alternatively, transfer this case to the United States District Court for the Southern District of Texas. Docket No. 17 at 11. Section 1631 of Title 28 directs the Court to transfer cases in order to cure jurisdictional defects where "it is in the interest of justice." Factors

weighing in favor of transfer instead of dismissal include "that the new action would be time barred," "that the claims are likely to have merit," and "that the original action was filed in good faith rather than filed after [the] plaintiff either realized or should have realized that the forum in which he or she filed was improper." *Trujillo*, 465 F.3d at 1223 n.16 (citations omitted).

The Court finds that transfer is appropriate. The Court does not have sufficient information to consider the first factor. However, the second and third factors weigh in favor of transfer over dismissal. Plaintiff has alleged a colorable claim of breach of contract and appears to have filed its lawsuit in Colorado in good faith. Although plaintiff may have suspected that personal jurisdiction issues would arise when it is suing a Texas entity about a Texas project, plaintiff advanced a plausible theory of personal jurisdiction. Therefore, the Court finds that the interests of justice favor transfer of this case to the Southern District of Texas rather than dismissal.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative to Transfer Venue to Texas [Docket No. 17] is **GRANTED** in part. It is further

**ORDERED** that, pursuant to 28 U.S.C. § 1631, this case is transferred to the United States District Court for the Southern District of Texas.

DATED September 12, 2018.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge